IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

FRANKLYN DEVON PRILLERMAN

      Plaintiff              CIVIL ACTION NO.

      v.                  13-1414

CITY OF PHILADELPHIA, ET AL..,      JURY TRIAL DEMANDED

      Defendant



FILED

JAN 26 2016

MICHAEL E. KUNZ, Clerk
By_____Dep. Clerk

## MOTION FOR RECONSIDERATION OF COURT'S ORDER: TO AMEND PLAINTIFFS'S COMPLAINT IN CV-13-1414 TO ADD COMMISSIONER LOUIS GIORLA

Pursuant to Federal Rule 15(a), Fed.R.Civ.P, Plaintiff seek Court's leave to amended complaint to add heretofore identified defendant Commissioner of Prisons, Louis Giorla, listed in initial complaint. To be added as a defendant in Civil Action 134-1414

**AMENDMENTS;**

1. Add Louis Giorla , Commissioner of Philadelphia Prisons as defendant personally and under color of law. Plaintiff, in his complaint, raises issues surrounding training and policy.

    a. The commissioner must sign off on every policy and procedure in place in the Philadelphia Prison System.

    b. The Commissioner is responsible for reviewing enacted policy's and procedures to make recommendations, adjustments.

    c. The Commissioner is responsible for insuring that current policy and procedures are compliant with Pennsylvania Criminal Procedure (where applicable) the Pennsylvania Constitution and the U.S. Constitution

    d. The above is part and parcel of maintaining a lawful environment.

2. Louis Giorla was named in the initial complaint. However this Court, on defendants' motion to dismiss, removed the commissioner as a defendant in this matter citing defendants' attorney argument that the commissioner is not liable for the actions of his subordinates. However, in the instant matter, subsequent to receiving a portion of discovery materials, it is clear that the commissioner is liable for his

own actions, the approving and reviewing of policy. Plaintiff contends that some of the policies and procedures were unconstitutional .

"We realize that appellant argues that, rather than relying on a respondent superior basis for liability, she alleged that Chiesa and Lanigan were liable as policymakers. Courts recognize that liability under § 1983 may be imposed on an official with final policymaking authority if that official establishes an unconstitutional policy that, when implemented, injures a plaintiff. Sample v. Diecks, 885 F.2d 1099, 1118 (3d Cir. 1989). However, to establish a claim against a policymaker under § 1983 a plaintiff must allege and prove that the official established or enforced policies and practices directly causing the constitutional violation. Id. at 1114 ("Thus, when a policymaking official establishes a constitutionally inadequate state procedure for depriving people of a protected interest and someone is thereafter deprived of such an interest, the official has 'subjected' that person to a due process violation."); see also Berlanti v. Bodman, 780 F.2d 296, 300-01 (3d Cir. 1985). Appellant's arguments regarding policymaking liability" Chavarriaga v, New Jersey Dept of Corrections, 806 F.3d (3rd Cir. 2015) (appendix 1)

3. Commission Giorla was appointed to his post as Commissioner of the Philadelphia Prison System in 2008. (appendix 2)

4. At the time of Giorla appointment Philadelphia Prison Policy 1.G.3; Subject: Video Conferencing , signed May 11, 2000 was put into effect July 11,2000. Said policy was developed in response to Harris v. City of Philadelphia, 82-1847 (E.D. Pa 1982, as amended; a Prison overcrowding case. (appendix 3) And the Pennsylvania Rules for Criminal Procedure, Rule 103 approving the use of advance communication from remote locations. Rule 103 was promulgated to expedite the Courts business with regard to pre-trial arraignments, bail and summary hearings. (appendix 4)

5. In response to Harris v. City of Philadelphia the City of Philadelphia began to use two-way simultaneous communication technology to reduce the prison population by expediting hearings using the new technology.

6. In 2003 the State Supreme Court promulgated Title 234 Rule 118 which extended the use of two simultaneous communications technology (ACT) to extradition and probation violation hearing. Because extradition hearings imbeds a liberty interest the 5TH, 6$^{th,8TH}$ and 14TH amendments to the U.S. Constitution applies. Additionally, because a probation violation hearing requires the establishment of "probable cause" the defendant is able to be represented by an attorney, if he elects to do so, again the 5th,6th,8th and 14th amendment guarantees apply. See Title 234 Rule 118(c) (appendix 5)

"When counsel for the defendant is present, the defendant **must** be permitted to communicate fully and confidentially with defense counsel immediately prior to and during the proceeding" (PRCP Rule 118(c)(emphasis added)

7. At the time of Commissioner Giorla's appointment PPS Policy 1.G.3 (still restricted to pretrial arraignments) was the policy adhered to and trained to at Curran-Fromhold despite the fact that PRCP Rule 118 had been established five(5) years earlier, thereby rendering the policy defective with the current rules of Pennsylvania Rule of Criminal Procedure.

8.  At the time of Commissioner Giorla's appointment PPS 1.G.3 had not been put into compliance with current law for eight (5) years.  During the five year period from 2003-2008 Rule 118 had been revised and renumbered several times; none of which was reflected in PPS Policy 1.G.3 signed May 11, 2000; effective July 11, 2000.  The Court should please note that revisions to existing rules by the Pennsylvania Supreme Court are published daily in the Philadelphia Legal Intelligence, weekly in the Pennsylvania Bulletin and in the Pennsylvania Titles when updated.

9. As Commissioner of Prisons and a member of the Executive Branch of Philadelphia City Government Mr. Giorla has a responsibility and duty to protect the civil rights of all the citizens, including the pre-trial detainees at CFCF as well as maintaining a lawful environment within the prison system.

**Mission**

To provide a secure correctional environment that adequately detains persons accused or convicted of illegal acts; to provide programs, services, and supervision in a safe, **lawful,** clean, humane environment; and to prepare incarcerated persons for reentry into society in a frame of mind that will facilitate their becoming law-abiding citizens. (Mission statement of Philadelphia Prison System) (emphasis added)

10.  At the time of Plaintiff's Extradition Hearing 12/11/12 PPS 1.G.3 of 7/11/2000 was still in effect, had not been put into compliance with PRCP 118 or 119 for nine (9) years in total and for four (4) under Commissioner Giorla executive leadership as a policy maker.

11.  During the four(4) year tenure of Commissioner Giorla, the Commissioner had the duty and responsibility to insure that the policies and procedures of the Philadelphia Prison System were in compliance with the current Pennsylvania Rules of Criminal Procedure. Therefore Plaintiff's extradition hearing was defective in a way that rises to a Constitutional level by violating Plaintiff's 6th and 14th Amendment guarantees.

12.  Plaintiff's 6th Amendment rights were violated because Plaintiff was denied full and confidential communication with his attorney as required by Title 234 Rule 119(c).

13.  Plaintiff's 14th Amendment guarantying equal protection under the law.  Plaintiff's extradition hearing was not held in compliance with the Rules of Criminal Procedure in effect at the time of the hearing and as a result was defective in a way that reaches to a constitutional level.]

*"Rule 109. Deffects in Form, Content, or Procedure.*

*A defendant shall not be discharged nor shall a case be dismissed because of a defect in the form or content of a complaint, citation, summons, or warrant, or a defect in the procedures of these rules, unless the defendant raises the defect before the conclusion of the trial in a summary case or before the conclusion of the preliminary hearing in a court case, and the defect is prejudicial to the rights of the defendant.*

*Comment*

*This rule combines and replaces former Rules 90 and 150.*

*This rule clarifies when a defendant should be discharged or a case dismissed because of a defect; it eliminates disputes as to what is an informal defect or a substantive defect. As a condition of relief regardless of whether the defect is in form, content, or procedure, the court or issuing authority must determine that there is actual prejudice to the rights of the defendant.*

*A complaint, citation, summons, or warrant may be amended at any time so as to remedy any defect in form or content that is not prejudicial to the rights of the defendant. Nothing in this rule shall prevent the filing of a new complaint or citation and the reissuance of process. Any new complaint or citation must be filed within the time permitted by the applicable statute of limitations.*

*Ordinarily, if a defendant does not raise a defect at the summary trial or before the conclusion of the preliminary hearing, the defendant cannot thereafter raise the defect as grounds for dismissal or discharge at a later stage in the proceedings. See Commonwealth v. Krall, 452 Pa. 215, 304 A.2d 488 (1973). In a summary case, however, the provisions of this rule do not preclude a defendant from raising a defect for the first time after the summary trial when the interests of justice require it, as for example, when the defendant was not represented by counsel during the proceedings before the district justice or when the defendant could not reasonably have discovered the defect until after the conclusion of the summary trial.*

*Any defect properly raised under this rule shall be specifically described on the docket by the issuing authority. See Pa.R.Crim.P. 135.*

*If the issuing authority determines that a defect is prejudicial, it is intended that the decision recorded on the docket pursuant to Rule 135(B)(13) shall be "discharge of the defendant" or "dismissal of the case," rather than "not guilty."' (234 Pa Code Rule 109 Defects in Form and Content) (appendix 6)*

15. On 12/11/12, the date of Plaintiff's extradition hearing, seventeen (17) other hearings were held consisting of extradition and GAGNON I hearings. All were held in the same hearing room and under the same circumstances and conditions as this Plaintiff (appendix 7)

16. A careful examination of the criminal court docket listing by courtroom on the courts website, shows that though thirty (30) records are listed per page, often more than one case is typically listed for one defendant, and they are consolidated at the time of the hearing. So even though one defendant's name is listed several cases may be involved. (appendix 8)

17. Though seventeen (17) defendants are listed as many as thirty-four 34 cases could easily have been decided on this one day of 12/11/12. (The number of 34 is an estimate, more typically each defendant has 2-5 cases at the time of the hearing) (see appendix 8)

18. 14. Commissioner Giorla's failure to fulfill his duties and responsibilities to insure a lawful environment and protect the Constitutional Rights of the Citizens of Philadelphia, particularly in regard to judicial proceedings( wherein the constitutional rights are in play) held within the Philadelphia Prison System; and his failure to review an eight year old policy at the time of his appointment and then to not review PPS 1.G.3 for compliance with the current rules for criminal procedure during his tenure for an additional seven (7) years under his watch amounts to negligence and a callous indifference to the constitutional rights of others.

Respectfully submitted:

**Franklyn Prillerman, Pro se**

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA


FRANKLYN DEVON PRILLERMAN

             Plaintiff                              CIVIL ACTION NO.

             v.                                     13-1414

CITY OF PHILADELPHIA, ET AL..,                      JURY TRIAL DEMANDED

             Defendant

FILED

JAN 2 6 2016

MICHAEL E. KUNZ, Clerk
By_____Dep. Clerk


CERTIFICATE OF SERVICE


I, Franklyn Prillerman, do hereby certifiy that on this date a correct copy of Plaintiff's
Amendments to Complaint CV13-1414 Pursuant to Rule 15(a) was sent via first class mail to:

Kristen Davis
City of Philadelphia Lawe Department
Civil Rights Unit
\1515 Arch St, 14th fl
Philadelphia, PA 19102

Date:  January 17, 2016

Respectfully submitted,

/s/ Franklyn D. Prillerman
123 E. Pomona St.

Philadelphia, PA 19144

IN THE UNITED STATES  DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA


FRANKLYN DEVON PRILLERMAN

       Plaintiff

       v.

CITY OF PHILADELPHIA, ET AL..,

       Defendant

CIVIL  ACTION NO.

13-1414

JURY TRIAL DEMANDED


**ORDER**


AND NOW this day_____ of_____,2016, upon consideration of Plaintiffs, Franklyn Prillerman, Motion to  Amend Complaint, and  any response thereto, it is hereby ORDERED and DECREED that the Motion is Granted.


BY THE COURT;


_____

Rufe, J.

PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 14-2044

_____

ALEXANDRA CHAVARRIAGA,

Appellant

v.

STATE OF NEW JERSEY DEPARTMENT OF
CORRECTIONS; ATTORNEY GENERAL NEW JERSEY;
NEW JERSEY COMMISSIONER OF CORRECTIONS;
CORRECTIONS SERGEANT BROWN; JOHN DOE #1;
JOHN DOE #2; JANE DOE; MARCUS WAIR; PHILIP
SHEPPARD; JOHN DOE #3; JOHN DOE #4; VARIOUS
UNKNOWN CORRECTIONS EMPLOYEES ASSIGNED
TO THE SPECIAL INVESTIGATIONS DIVISION OF THE
DEPARTMENT OF CORRECTIONS

_____

On Appeal from the United States District Court for the
District of New Jersey
(D.C. Civ. No. 3-12-cv-04313)
Honorable Michael A. Shipp, District Judge

_____

Argued June 18, 2015

against them on a <u>respondeat superior</u> theory of liability.[8]

We realize that appellant argues that, rather than relying on a <u>respondeat superior</u> basis for liability, she alleged that Chiesa and Lanigan were liable as policymakers. Courts recognize that liability under § 1983 may be imposed on an official with final policymaking authority if that official establishes an unconstitutional policy that, when implemented, injures a plaintiff. <u>Sample v. Diecks</u>, 885 F.2d 1099, 1118 (3d Cir. 1989). However, to establish a claim against a policymaker under § 1983 a plaintiff must allege and prove that the official established or enforced policies and practices directly causing the constitutional violation. <u>Id.</u> at 1114 ("Thus, when a policymaking official establishes a constitutionally inadequate state procedure for depriving people of a protected interest and someone is thereafter deprived of such an interest, the official has 'subjected' that person to a due process violation."); <u>see also</u> <u>Berlanti v. Bodman</u>, 780 F.2d 296, 300-01 (3d Cir. 1985).

Appellant's arguments regarding policymaking liability

------

[8] We also point out that a court can affirm a judgment for any reason supported by the record and therefore a court may affirm an order for summary judgment for a defendant if the complaint does not state a claim on which relief may be granted. <u>See</u> <u>In re Enron Corp. Sec., Derivative & ERISA Litig.</u>, 610 F. Supp. 2d 600, 607 (S.D. Tex. 2009) ("While 'failure to state a claim' is usually challenged by a motion to dismiss under Rule 12(b)(6), it also may serve as a basis for summary judgment. In a summary judgment context, the failure to state a claim is the 'functional equivalent' of the failure to raise a genuine issue of material fact." (citing <u>Whalen v. Carter</u>, 954 F.2d 1087, 1098 (5th Cir. 1992))).

are insufficient. Appellant's principal allegations were that the prison personnel deprived her of potable water at the NJSP for several days on two separate occasions, subjected her to an impermissible manual body cavity search during her second confinement at the NJSP, denied her clothing on two separate occasions at the NJSP, and denied her sanitary napkins and medications during her second confinement at the NJSP. But she did not allege in her complaint that the persons directly involved in this treatment or the other treatment of which she complains were implementing policies that Chiesa or Lanigan had promulgated or were following existing practices that they countenanced likely to result in the violation of inmates' constitutional rights. Thus, she did not allege that Chiesa or Lanigan established policies to deny potable water to inmates, to subject inmates to excessively intrusive body cavity searches, or to subject inmates to the other treatment of which she complains. Therefore, neither Chiesa nor Lanigan can be held responsible on a policymaker theory of liability for the alleged violations of appellant's constitutional rights with respect to the denial of water, the body cavity search, or other treatment of which she complains. See Bd. of Cnty. Comm'rs v. Brown, 520 U.S. 397, 404, 417, 117 S.Ct. 1382, 1388, 1394 (1997). Inasmuch as appellant did not allege facts supporting any of her claims that could justify imposing liability on Chiesa or Lanigan on the basis of any theory of liability under § 1983, we will affirm the order for summary judgment on the aspects of the claims in the complaint against them under that section and parallel New Jersey law.

2.    Appellant's §§ 1985 and 1986 claims against Chiesa and Lanigan fail for the same reasons as her § 1983 claims

# Louis Giorla

**Commissioner of Prisons**

Louis Giorla was named Acting Commissioner of the Philadelphia Prison System (PPS) on Thursday, January 10, 2008 and his permanent appointment was announced on March 26, 2008.

Prior to his appointment, Commissioner Giorla had been the Warden at the Riverside Correctional Facility (RCF) since May of 2006, and previously served as Warden of the Curran-Fromhold Correctional Facility (CFCF). A life-long Philadelphian, Commissioner Giorla began his career as an Officer at the House of Correction in 1982.

The 52 year-old Northeast Philadelphia resident was Director of the Prisons Internal Affairs Division for two years, and then Deputy Warden at Alternative & Special Detention, before being promoted to Warden in 2005. The son of a Correctional Officer, he attended Northeast Catholic High School and earned an Associates Degree in Criminal Justice at Community College of Philadelphia. With his wife Debbie, a former PPS employee, he has three children and 6 grandchildren.



Exhibit 3

Appendix 3

| PHILADELPHIA PRISONS POLICIES AND PROCEDURES | Policy Number: 1.G.3 | Page 1 of 3 |
|---|---|---|
| **Part:** 1 - General Administration <br><br> **Section:** G - Hearings and Lineups | **Related Pennsylvania Minimum Standards:** title 37 PA Code 95.241 | |
| **Subject:** Video Conferencing | **Supersedes:** Policy 1.G.3 signed on December 26, 1996 | |
| Approved: _____ <br> Commissioner <br><br> **Signature Date:** May 11, 2000 | **Related Court Orders:** Harris v. City of Philadelphia, 82-1847 (E.D. PA 1982, as amended) <br><br> Over crowding | |
| **Effective Date:** July 11, 2000 | **Date of Scheduled Review:** May 11, 2000 | |

## Purpose

The purpose is to establish the policy and procedures of the Philadelphia Prison System as to the use of Video Conferences between inmates and agencies and agents of the criminal justice system.

## Policy

It is the policy of the PPS to allow inmates to participate in video conferences with agencies and agents of the Criminal Justice System in matters relating to new arrests and cases for which they are currently incarcerated. All such contact will follow procedures set forth herein.

## Definitions

*Video Conference:* Confidential contact between an inmate (defendant) and an authorized agent of the Criminal Justice System to discuss matters related to a new arrest or the inmate's current incarceration using telephone lines and video technology. Video conference is not the same as video arraignment (Policy 1.G.4, Video Conferencing), even though the same equipment and technology is used.

| PHILADELPHIA PRISONS POLICIES AND PROCEDURES | Policy Number: 1.G.3 | Page 2 of 3 |
|---|---|---|
| Part: 1 - General Administration | Subject: Video Conferencing | |
| Section: G - Hearings and Lineups | Date: May 11, 2000 | |

*Procedural Overview*

Video Conferencing may occur between the inmate (defendant) and the Pre-Trial Service Division of the First Judicial District or between the inmate (defendant) and his/her attorney. The only Video Conferencing equipment in the PPS is located in an interview room in CFCF. This equipment is used now only in the context of a Preliminary Arraignment.

An inmate (defendant) will have the opportunity in all new arrests to have a Video-Conference with a PTS (Pre-Trial Services) Interviewer to determine demographic and other related information for presentation to the Bail Commissioner for use in preparation for and during the Preliminary Arraignment. During this conference, the inmate (defendant) will be able to see and hear the PTS interviewer, who will be located at a remote site and the PTS interviewer will be able to see and hear the inmate. There will be full two-way, verbal communication between both parties.

Additionally, should the necessity arise, the inmate (defendant) and his/her attorney may use this equipment in the remote site to communicate relative to the Preliminary Arraignment that is occurring.

All of this communication is confidential and may be terminated by either party with just cause.

*Video Conferencing Procedures for Inmates (Defendants) in the Philadelphia Prison System*

Inmates (defendants) who have been rearrested on new charges while incarcerated will be transported to CFCF and escorted to the interview room for Video Arraignment.

A copy of a consolidated arrest form will be completed and faxed to Pre-Trial Services by the arresting officer. Pre-Trial Service's interview staff will notify the PPS that a video conference is to be initiated with an inmate (defendant). Video equipment goes on automatically with on action by PPS staff or inmate (defendant).

PTS interviewer reviews information from Consolidated Arrest Form and other relevant sources. Information is verified by inmate (defendant) and other pertinent information is gathered. Information then is passed to Municipal Court Clerk for use by Bail Commissioner and inclusion in file.

Inmate (defendant) is alone in the interview room during the conference, but PPS staff will observe for purposes of security.

**Revised**                              **May 11, 2000**                              **Revised**

Prillerman 315

| PHILADELPHIA PRISONS<br>POLICIES AND PROCEDURES | Policy Number:<br>1.G.3 | Page   2<br>of   3 |
|---|---|---|
| Part:  I - General Administration | Subject:    Video Conferencing | |
| Section:  G - Hearings and Lineups | Date:    May 11, 2000 | |

*PPS staff, except with approval of legal counsel, will not record or monitor a transmission.*

### Limitations

All Video-Conferencing will occur within the context of the Preliminary Arraignment.

Discussions between the inmate (defendant) and other Criminal Justice Agencies taking place during the Video Preliminary Arraignment are not considered Video-Conferencing.

Video-Conferences will take place on or during hours consistent with the 10:00AM to 6:00PM operational hours of the Video Arraignment system.

Revised                                      May 11, 2000                                      Revised

Prillerman 316

The
Pennsylvania

# PART A. Business of the Courts

## Rule 103. Definitions.

The following words and phrases, when used in any Rule of Criminal Procedure, shall have the following meanings:

**ADVANCED COMMUNICATION TECHNOLOGY** is any communication equipment that is used as a link between parties in physically separate locations, and includes, but is not limited to: systems providing for two-way simultaneous communication of image and sound; closed-circuit television; telephone and facsimile equipment; and electronic mail.

**ADVANCED COMMUNICATION TECHNOLOGY SITE** is any approved location within Pennsylvania designated by the president judge, or the president judge's designee, with advanced communication technology equipment that is available for parties in a criminal matter to communicate with others in physically separate locations as provided in these rules.

**AFFIANT** is any responsible person capable of taking an oath who signs, swears to, affirms, or, when permitted by these rules, verifies a complaint and appreciates the nature and quality of that person's act.

**ARRAIGNMENT** is the pretrial proceeding in the court of common pleas conducted pursuant to Rule 571.

**BAIL** is the security or other guarantee required and given for the release of a person, conditioned upon a written undertaking, in the form of a bail bond, that the person will appear when required and comply with all conditions set forth in the bail bond.

**BAIL AUTHORITY** is the magisterial district judge, magistrate, Philadelphia arraignment court magistrate, or the judge with jurisdiction over the case who is authorized by law to set, modify, revoke, or deny bail.

**CAPITAL CASE** or **CRIME** is one in or for which the death penalty may be imposed.

**CARRIER SERVICE** includes, but is not limited to, delivery by companies such as Federal Express or United Parcel Service, or a local courier service, and courthouse interoffice mail. The courthouse interoffice mail is a method of delivery used in some judicial districts for transmittal of documents between offices in the courthouse, and between the courthouse and other county

, facilities, including the county jail facility.

**CLERK OF COURTS** is that official, without regard to that person's title, in each judicial district who, pursuant to 42 **Pa.C.S.** § § 2756 and 2757, has the responsibility and function to maintain the official criminal case file and list of docket entries, and to perform such other duties as required by rule or law.

**COLLATERAL** is cash or a cash equivalent deposited in summary cases.

**COPY** is an exact duplicate of an original document, including any required signatures, produced through mechanical or electronic means, and includes, but is not limited to: carbon copies; copies reproduced by using a photocopy machine, by transmission using facsimile equipment, or by scanning into and printing out of a computer.

**COURT** is a court of record.

**COURT ADMINISTRATOR** is that official in each judicial district who has the responsibility for case management and such other responsibilities as provided by the court.

**COURT CASE** is a case in which one or more of the offenses charged is a misdemeanor, felony, or murder of the first, second, or third degree.

**CRIMINAL PROCEEDINGS** include all actions for the enforcement of the Penal Laws.

**INDICTMENT** is the instrument holding the defendant for court after a grand jury votes to indict and authorizing the attorney for the Commonwealth to prepare an information.

**INFORMATION** is a formal written statement charging the commission of an offense signed and presented to the court by the attorney for the Commonwealth after a defendant is held for court, is indicted by the grand jury, or waives the preliminary hearing or a grand jury proceeding.

**ISSUING AUTHORITY** is any public official having the power and authority of a magistrate, a Philadelphia arraignment court magistrate, or a magisterial district judge.

**LAW ENFORCEMENT OFFICER** is any person who is by law given the power to enforce the law when acting within the scope of that person's employment.

**MOTION** includes any challenge, petition, application, or other form of request for an order or relief.

**ORDINANCE** is a legislative enactment of a political subdivision.

**PENAL LAWS** include all statutes and embodiments of the common law which establish, create, or define crimes or offenses, including any ordinances which may provide for imprisonment upon conviction or upon failure to pay a fine or penalty.

**POLICE OFFICER** is any person who is by law given the power to arrest when acting within the scope of the person's employment.

**POLITICAL SUBDIVISION** shall mean county, city, township, borough, or incorporated town or village having legislative authority.

**PRELIMINARY ARRAIGNMENT** is the proceeding following an arrest conducted before an issuing authority pursuant to Rule 540 or Rule 1003(D).

**SEALED VERDICT** is a verdict unanimously agreed upon by the jury, completed, dated, and signed by the foreman of the jury, and closed to open view.

**SECURITY** shall include cash, certified check, money order, personal check, or guaranteed arrest bond or bail bond certificate.

**SIGNATURE**, when used in reference to documents generated by the minor judiciary or court of common pleas, includes a handwritten signature, a copy of a handwritten signature, a computer generated signature, or a signature created, transmitted, received, or stored by electronic means, by the signer or by someone with the signer's authorization, unless otherwise provided in these rules.

**SUMMARY CASE** is a case in which the only offense or offenses charged are summary offenses.

*VOIR DIRE* is the examination and interrogation of prospective jurors.

### Comment

The definitions of arraignment and preliminary arraignment were added in 2004 to clarify the distinction between the two proceedings. Although both are administrative proceedings at which the defendant is advised of the charges and the right to counsel, the preliminary arraignment occurs shortly after an arrest before a member of the minor judiciary, while an arraignment occurs in the court of common pleas after a case is held for court and an information is filed.

The definition of indictment was amended in 2012 consistent with the adoption of the new indicting grand jury rules in Chapter 5 Part E. Under the new rules, the indictment is the functional equivalent of an issuing authority's order holding the defendant for court and that forms the basis for the information that is prepared by the attorney for the Commonwealth. Formerly, an indictment was defined as a bill of indictment that has been approved by a grand jury and properly returned to court, or which has been endorsed with a waiver as provided in former Rule 215.

The definition of information was added to the rules as part of the implementation of the 1973 amendment to PA. CONST. art. I, § 10, permitting the substitution of informations for indictments. The term "information" as used here should not be confused with prior use of the term in Pennsylvania practice as an instrument which served the function now fulfilled by the complaint.

The definitions of bail authority and issuing authority were amended in 2005 to reflect the provisions of Act 207 of 2004 that changed the phrase "district justice" to "magisterial district judge," effective January 29, 2005. *See also* the Court's January 6, 2005 Order providing that any reference to "district justice" in a court rule shall be deemed a reference to a "magisterial district

The definitions of ''bail authority'' and ''issuing authority'' were amended in 2009 to reflect the provisions of Act 98 of 2008 that changed the phrase ''bail commissioner'' to ''arraignment court magistrate,'' effective December 8, 2008. *See also* the Court's January 21, 2009 Order providing that any reference to ''bail commissioner'' in a court rule shall be deemed a reference to an ''arraignment court magistrate.''

Neither the definition of law enforcement officer nor the definition of police officer gives the power of arrest to any person who is not otherwise given that power by law.

*See* Rule 1036 for the definition of hearing officers of the Philadelphia Municipal Court Traffic Division as ''issuing authorities'' for limited purposes specified in the rule.

The definition of signature was added in 2004 to make it clear when a rule requires a document generated by the minor judiciary or court of common pleas to include a signature or to be signed, that the signature may be in any of the forms provided in the definition. In addition, documents that institute proceedings or require the inclusion of an oath ordinarily are not documents generated by the minor courts or courts of common pleas and therefore any signature required on the document would not be included in this definition of signature; however, in the event such a document is generated by the minor courts or the courts of common pleas, the form of ''signature'' on this document is limited to handwritten, and the other forms of signature provided in the definition are not permitted.

Included in Chapter 5 Part C of the rules are additional definitions of words and phrases that apply specifically to bail in criminal cases. *See, e.g.*, Rule 524, which defines the types of release on bail.

Official Note

Previous Rules 3 and 212 adopted June 30, 1964, effective January 1, 1965, suspended January 31, 1970, effective May 1, 1970; present Rule 3 adopted January 31, 1970, effective May 1, 1970; amended June 8, 1973, effective July 1, 1973; amended February 15, 1974, effective immediately; amended June 30, 1977, effective September 1, 1977; amended January 4, 1979, effective January 9, 1979; amended July 12, 1985, effective January 1, 1986; January 1, 1986 effective date extended to July 1, 1986; amended August 12, 1993, effective September 1, 1993; amended February 27, 1995, effective July 1, 1995; amended September 13, 1995, effective January 1, 1996. The January 1, 1996 effective date extended to April 1, 1996; the April 1, 1996 effective date extended to July 1, 1996; renumbered Rule 103 and Comment revised March 1, 2000, effective April 1, 2001; amended May 10, 2002, effective September 1, 2002; amended March 3, 2004, effective July 1, 2004; amended April 30, 2004, effective July 1, 2004; amended August 24, 2004, effective August 1, 2005; amended February 4, 2005, effective immediately; amended May 6, 2009, effective immediately; amended June 21, 2012, effective in 180 days; Comment revised May 7, 2014, effective immediately.

*Committee Explanatory Reports*:

Report explaining the August 12, 1993 amendments published at 22 Pa.B. 3826 (July 25, 1992).

Final Report explaining the February 27, 1995 amendments published with the Court's Order at 25 Pa.B. 935 (March 18, 1995).

Final Report explaining the September 13, 1995 amendments published with Court's Order at 25 Pa.B. 4116 (September 30, 1995).

Final Report explaining the March 1, 2000 reorganization and renumbering of the rules published with the Court's Order at 30 Pa.B. 1478 (March 18, 2000).

Final Report explaining the May 10, 2002 amendments concerning advanced communication technology published with the Court's Order at 32 Pa.B. 2591 (May 25, 2002).

Final Report explaining the March 3, 2004 amendments defining carrier service, clerk of courts, court administrator, and motion published with the Court's Order at 34 Pa.B. 1561 (March 20, 2004).

Final Report explaining the April 30, 2004 amendments defining ''signature'' published with the Court's Order at 34 Pa.B. 2542 (May 15, 2004).

Final Report explaining the August 24, 2004 amendments adding definitions of arraignment and preliminary arraignment published with the Court's Order at 34 Pa.B. 5025 (September 11, 2004).

Final Report explaining the February 4, 2005 amendments modifying the definitions of bail authority and issuing authority published with the Court's Order at 35 Pa.B. 1333 (February 19, 2005).

Final Report explaining the May 6, 2009 amendments modifying the definitions of bail authority and issuing authority published with the Court's Order at 39 Pa.B. 2567 (May 23, 2009).

Final Report explaining the June 21, 2012 amendments modifying the definitions of ''indictment'' and ''information'' published with the Court's Order at 42 Pa.B. 4153 (July 7, 2012).

Final Report explaining the May 7, 2014 revision of the Comment cross-referencing the Rule 1036 limited definition of Philadelphia Municipal Court Traffic Division hearing officers as ''issuing authorities'' published with the Court's Order at 44 Pa.B. 3056 (May 24, 2014).

## Source

The provisions of this Rule 103 amended May 10, 2002, effective September 1, 2002, 32 Pa.B. 2582; amended March 3, 2004, effective July 1, 2004, 34 Pa.B. 1547; amended April 30, 2004, effective July 1, 2004, 34 Pa.B. 2541; amended August 24, 2004, effective August 1, 2005, 34 Pa.B. 5016; amended February 4, 2005, effective immediately, 35 Pa.B. 1331; amended May 22, 2009, effective immediately, 39 Pa.B. 2567; amended June 21, 2012, effective in 180 days, 42 Pa.B. 4140; amended May 7, 2014, effective immediately, 44 Pa.B. 3056. Immediately preceding text appears at serial pages (361811) to (361814).

No part of the information on this site may be reproduced for profit or sold for profit.

This material has been drawn directly from the official Pennsylvania Code full text database. Due to the limitations of HTML or differences in display capabilities of different browsers, this version may differ slightly from the official printed version.

*Video hearing Exponid 2003*

*Appendix 5*

4287

# THE COURTS

## Title 234—RULES OF CRIMINAL PROCEDURE

### [234 PA. CODE CH. 1]

### Order Promulgating New Rule 118; No. 295 Criminal Procedural Rules; Doc. No. 2

The Criminal Procedural Rules Committee has prepared a Final Report explaining new Rule 118. The new rule provides the procedures generally authorizing a court or issuing authority to use two-way simultaneous audio-visual communication, which is a form of advanced communication technology (ACT), in criminal proceedings, and makes it clear there are certain proceedings in which the use of two-way simultaneous audio-visual communication would not be permitted. The Final Report follows the Court's Order.

### Order

*Per Curiam:*

*Now,* this 11th day of August, 2003, upon the recommendation of the Criminal Procedural Rules Committee; the proposal having been published before adoption at 32 Pa.B. 2197 (May 4, 2002), and in the *Atlantic Reporter* (Second Series Advance Sheets, Vol. 795), and a Final Report to be published with this *Order:*

*It Is Ordered* pursuant to Article V, Section 10 of the Constitution of Pennsylvania that new Rule of Criminal Procedure 118 is promulgated in the following form.

This *Order* shall be processed in accordance with Pa.R.J.A. 103(b), and shall be effective September 1, 2003.

### Annex A

### TITLE 234. RULES OF CRIMINAL PROCEDURE

### CHAPTER 1. SCOPE OF RULES, CONSTRUCTION AND DEFINITIONS, LOCAL RULES

#### PART A. Business of the Courts

**Rule 118. Use of Two-Way Simultaneous Audio-Visual Communication in Criminal Proceedings.**

(A) The court or issuing authority may use two-way simultaneous audio-visual communication at any criminal proceeding except:

(1) preliminary hearings;

(2) trials;

(3) sentencing hearings;

(4) parole, probation, and intermediate punishment revocation hearings; and

(5) any proceeding in which the defendant has a constitutional or statutory right to be physically present.

(B) The defendant may consent to any proceeding being conducted using two-way simultaneous audio-visual communication.

(C) When counsel for the defendant is present, the defendant must be permitted to communicate fully and confidentially with defense counsel immediately prior to and during the proceeding.

### Comment

This rule was adopted in 2003 to make it clear that unless the case comes within one of the exceptions in

paragraph (A), the court or issuing authority may use two-way simultaneous audio-visual communication in any criminal proceeding. Two-way simultaneous audio-visual communication is a type of advanced communication technology as defined in Rule 103.

Nothing in this rule is intended to limit any right of a defendant to waive his or her presence at a criminal proceeding in the same manner as the defendant may waive other rights. See, e.g., Rule 602 Comment. Negotiated guilty pleas when the defendant has agreed to the sentence and probation revocation hearings are examples of hearings in which the defendant's consent to proceed using two-way simultaneous audio-visual communication would be required. Hearings on post-sentence motions, bail hearings, extradition hearings, and *Gagnon* I hearings are examples of proceedings that may be conducted using two-way simultaneous audio-visual communication without the defendant's consent. It is expected the court or issuing authority would conduct a colloquy for the defendant's consent when the defendant's constitutional right to be physically present is implicated.

Within the meaning of this rule, counsel is present when physically with the defendant or with the judicial officer conducting the criminal proceeding.

This rule does not apply to preliminary arraignments (Rule 540), arraignments (Rule 571), or to search warrant (Rule 203) and arrest warrant (Chapter 5 Part B(3)) procedures.

This rule is not intended to preclude the use of advanced communication technology for the preservation of testimony as permitted by Rules 500 and 501.

See Rule 542 for the procedures governing preliminary hearings.

See Chapter 6 for the procedures governing trials.

See Chapter 7 for the procedures governing sentencing hearings.

See Rule 708 for the procedures governing revocation of probation, intermediate punishment, and parole.

The paragraph (A)(4) reference to revocation hearings addresses *Gagnon* II-type probation (*Gagnon v. Scarpelli,* 411 U.S. 778 (1973)) and parole (*Morrissey v. Brewer,* 408 U.S. 471 (1972)) revocation hearings, and is not intended to prohibit the use of two-way simultaneous audio-visual communication in hearings to determine probable cause (*Gagnon I*).

**Official Note:** New Rule 118 adopted August 7, 2003, effective September 1, 2003.

*Committee Explanatory Reports:*

Final Report explaining new Rule 118 published with the Court's Order at 33 Pa.B. 4287 (August 30, 2003).

### FINAL REPORT[1]

### New Pa.R.Crim.P. 118

### *Use of Two-Way Simultaneous Audio-Visual Communication in Criminal Proceedings*

A. *Introduction*

On August 7, 2003, effective September 1, 2003, upon the recommendation of the Criminal Procedural Rules

[1] The Committee's Final Reports should not be confused with the official Committee Comments to the rules. Also note that the Supreme Court does not adopt the Committee's Comments or the contents of the Committee's explanatory Final Reports.

availability of the issuing authority. See also Rule 116 (General Supervisory Powers of President Judge) and Rule 131 (Location of Proceedings Before Issuing Authority).

Paragraph (A), derived from former Rule 132(A) (Continuous Availability), clarifies that it is the president judge's responsibility to make sure that there are issuing authorities available within his or her judicial district (1) on a continuous basis to issue search and arrest warrants, paragraph (A)(1); (2) pursuant to one or a combination of the systems of coverage enumerated in paragraph (B) to conduct summary trials and preliminary arraignments, and perform related duties, paragraph (A)(2); and (3) during normal business hours to conduct all other business of the minor judiciary, paragraph (A)(3). It is expected that the president judge will continue the established procedures in the judicial district or establish new procedures to ensure sufficient availability of issuing authorities consistent with this paragraph.

By providing the alternate systems of coverage in paragraph (B), this rule recognizes the differences in the geography and judicial resources the judicial districts.

An issuing authority is "available" pursuant to paragraph (A) when he or she is able to communicate in person or by using advanced communication technology ("ACT") with the person requesting services pursuant to this rule. See Rule 103 for the definition of ACT. Concerning the use of ACT, see Rule 118 (Use of Two-Way Simultaneous Audio-Visual Communication in Criminal Proceedings). See also Rules 203, 513, 518, and 540 providing for the use of ACT to request and obtain warrants and conduct preliminary arraignments.

Nothing in this rule limits an issuing authority from exercising sound judicial discretion, within the parameters established by the president judge pursuant to paragraph (B), in deciding how to respond to a request for services outside normal business hours. See, e.g., Rule 203(E) that requires, when a search warrant is being requested for a nighttime search, that the affidavits show reasonable cause for such nighttime search; Rule 509(1) and (2) that authorize the use of summonses instead of warrants in certain court cases; and Rule 519(B) that requires the police officer to release a defendant arrested without a warrant in certain specified court cases.

In determining which system of coverage to elect, the president judge must consider the rights of the defendant, see, e.g. Commonwealth v. Duncan, 525 A.2d 1177 (Pa. 1987), and the judicial district's resources and coverage needs, as well as the obligations of the police and attorney for the Commonwealth to ensure the defendant is brought before an issuing authority without unnecessary delay as required by law, see, e.g., Rules 431, 441, 516, 517, and 519. See also Commonwealth v. Perez, A.2d (Pa. 2004).

The proceedings enumerated in paragraph (A)(2) include (1) setting bail before verdict pursuant to Rule 520(A) and Rule 540, and either admitting the defendant to bail or committing the defendant to jail, and (2) determining probable cause whenever a defendant is arrested without a warrant pursuant to Rule 540(C).

Pursuant to paragraph (C), the president judge also is responsible for making sure there is an issuing authority or other designated official available within the judicial district on a continuous basis to accept bail pursuant to Rule 520(B). The president judge, by local rule, may continue established procedures or establish new procedures for the after-hours acceptance of deposits of bail by

an issuing authority, a representative of the office of the clerk of courts, or such other individual designated by the president judge. See Rule 535(A). Given the complexities of posting real estate to satisfy a monetary condition of release, posting of real estate may not be feasible outside normal business hours.

When the president judge designates another official to accept bail deposits, that official's authority is limited under this rule to accepting the bail deposit, and under Rule 525 to releasing the defendant upon execution of the bail bond. Pursuant to Rule 535(A), the official is authorized only to have the defendant execute the bail bond and to deliver the bail deposit and bail bond to the issuing authority or clerk of courts.

The local rule requirements in paragraphs (B) and (C) (1) ensure there is adequate notice of (a) the system of coverage, thereby providing predictability in the issuing authority's duty schedule, and (b) the official authorized to accept bail, (2) promote the efficient administration of justice, and (3) provide a means for the Supreme Court to monitor the times and manner of coverage in each judicial district.

The local rules promulgated pursuant to this rule should include other relevant information, such as what are the normal business hours of operation or any special locations designated by the president judge to conduct business, that will assist the defendants, defense counsel, attorneys for the Commonwealth, police, and members of the public.

Concerning other requirements for continuous coverage by issuing authorities in Protection from Abuse Act cases, see 23 Pa.C.S. § 6110 and Pa.R.C.P.D.J. 1203.

**Official Note:** Former Rule 117 adopted September 20, 2002, effective January 1, 2003; renumbered Rule 118 , 2004, effective , 2004. New Rule 117 adopted , 2004, effective , 2004.

*Committee Explanatory Reports:*

Report explaining new Rule 117 published at 33 Pa.B. 5613 (November 12, 2003). Supplemental Report explaining the post-publication changes published at 34 Pa.B. 4421 (August 14, 2004).

Rule **[ 117 ] 118**. Court Fees Prohibited For Two-Way Simultaneous Audio-Visual Communication.

\* \* \* \* \*

**Official Note:** New Rule 117 adopted September 20, 2002, effective January 1, 2003; **renumbered Rule 118 , 2004, effective , 2004**.

*Committee Explanatory Reports:*

\* \* \* \* \*

**Report explaining the renumbering of Rule 117 as Rule 118 published at 33 Pa.B. 5613 (November 12, 2003). Supplemental Report explaining the post-publication changes published at 34 Pa.B. 4421 (August 14, 2004).**

Rule **[ 118 ] 119**. Use of Two-Way Simultaneous Audio-Visual Communication in Criminal Proceedings.

\* \* \* \* \*

**Comment**

\* \* \* \* \*

Nothing in this rule is intended to limit any right of a defendant to waive his or her presence at a criminal proceeding in the same manner as the defendant may

Appendix 6

## Rule 109. Defects in Form, Content, or Procedure.

A defendant shall not be discharged nor shall a case be dismissed because of a defect in the form or content of a complaint, citation, summons, or warrant, or a defect in the procedures of these rules, unless the defendant raises the defect before the conclusion of the trial in a summary case or before the conclusion of the preliminary hearing in a court case, and the defect is prejudicial to the rights of the defendant.

### Comment

This rule combines and replaces former Rules 90 and 150.

This rule clarifies when a defendant should be discharged or a case dismissed because of a defect; it eliminates disputes as to what is an informal defect or a substantive defect. As a condition of relief regardless of whether the defect is in form, content, or procedure, the court or issuing authority must determine that there is actual prejudice to the rights of the defendant.

A complaint, citation, summons, or warrant may be amended at any time so as to remedy any defect in form or content that is not prejudicial to the rights of the defendant. Nothing in this rule shall prevent the filing of a new complaint or citation and the reissuance of process. Any new complaint or citation must be filed within the time permitted by the applicable statute of limitations.

Ordinarily, if a defendant does not raise a defect at the summary trial or before the conclusion of the preliminary hearing, the defendant cannot thereafter raise the defect as grounds for dismissal or discharge at a later stage in the proceedings. See *Commonwealth v. Krall*, 452 Pa. 215, 304 A.2d 488 (1973). In a summary case, however, the provisions of this rule do not preclude a defendant from raising a defect for the first time after the summary trial when the interests of justice require it, as for example, when the defendant was not represented by counsel during the proceedings before the district justice or when the defendant could not reasonably have discovered the defect until after the conclusion of the summary trial.

Any defect properly raised under this rule shall be specifically described on the docket by the issuing authority. See Pa.R.Crim.P. 135.

If the issuing authority determines that a defect is prejudicial, it is intended that the decision recorded on the docket pursuant to Rule 135(B)(13) shall be ''discharge of the defendant'' or ''dismissal of the case,'' rather than ''not guilty.''

Official Note

Former Rule 90 adopted July 12, 1985, effective January 1, 1986; effective date extended to July 1, 1986; rescinded March 1, 2000, effective April 1, 2001, and replaced by Rule 109.

Former Rule 150, formed from former Rule 114 (Informal Defects), and former Rule 115 (Substantive Defects), both adopted June 30, 1964, effective January 1, 1965; suspended effective May 1, 1970; both revised January 31, 1970, effective May 1, 1970; combined, renumbered Rule 150 and amended September 18, 1973, effective January 1, 1974; amended April 8, 1982, effective July 1, 1982, Comment revised July 12, 1985, effective January 1, 1986; effective date extended to July 1, 1986; rescinded March 1, 2000, effective April 1, 2001, and replaced by Rule 109. New Rule 109 adopted March 1, 2000, effective April 1, 2001; Comment revised July 10, 2008, effective February 1, 2009.

*Committee Explanatory Reports*:

Final Report explaining the March 1, 2000 reorganization and renumbering of the rules, and the provisions of Rule 109, published with the Court's Order at 30 Pa.B. 1477 (March 18, 2000).

Final Report explaining the July 10, 2008 revisions to the Comment related to the cross-reference to Rule 135, published with the Court's Order at 38 Pa.B. 3975 (July 26, 2008).

## Source

The provisions of this Rule 109 amended July 10, 2008, effective February 1, 2009, 38 Pa.B. 3971. Immediately preceding text appears at serial pages (264118) and (289061).

---

No part of the information on this site may be reproduced for profit or sold for profit.

This material has been drawn directly from the official Pennsylvania Code full text database. Due to the limitations of HTML or differences in display capabilities of different browsers, this version may differ slightly from the official printed version.

*Appendix* —

*Video Hearing*

*Rule 614*

*8 hrs*
*68 hearing people*    *68 hearings*
*7 mins per hearing*

Prillerman 57

BENCH WARRANTS    Fax 2156857837    Jan  6 2016 09:35am    P004/008

Scheduled Events
B/W-HEARING
From 12/11/2012 to 12/11/2012

| Facility Judge | Event Location | Event ID Security | Start Housing | Status | Intake Remarks | PID | Name |
|---|---|---|---|---|---|---|---|
| ASDCU | B/W-HEARING | EXTRADITION HEARING | 12/11/2012 08:00 | $RELEASED | | 839153 | HOLMAN, JACQUELINE |
| | BENCH WARR | HEAR RM    MINIMUM | | | ROOM 888 | | |
| CFCF | B/W-HEARING | EXTRADITION HEARING | 12/11/2012 08:00 | $RELEASED | | 961856 | DICKEY, MICHAEL |
| | BENCH WARR | HEAR RM    CLOSE | | | ROOM 888 | | |
| | B/W-HEARING | EXTRADITION HEARING | 12/11/2012 08:00 | $RELEASED | | 1053812 | NICHOLAS, SHAKUR |
| | BENCH WARR | HEAR RM    CLOSE | | | ROOM 888 | | |
| | B/W-HEARING | EXTRADITION HEARING | 12/11/2012 08:00 | $RELEASED | 1420008 | 840711 | HARRIS, SHANNON |
| | BENCH WARR | HEAR RM    CLOSE | CFCF B2POD4 23 2 | | ROOM 888 | | |
| | B/W-HEARING | EXTRADITION HEARING | 12/11/2012 08:00 | $RELEASED | | 977251 | BROWN, PAUL |
| | BENCH WARR | HEAR RM    MEDIUM | | | ROOM 888 | | |
| | B/W-HEARING | EXTRADITION HEARING | 12/11/2012 08:00 | $RELEASED | | 448523 | PILLERMAN, FRANKLIN DEVON |
| | BENCH WARR | HEAR RM    CLOSE | | | ROOM 888 | | |
| | B/W-HEARING | EXTRADITION HEARING | 12/11/2012 08:00 | $RELEASED | | 1063038 | KARL, ROSEBORO |
| | BENCH WARR | HEAR RM    CLOSE | | | ROOM 888 | | |
| MEANS, RAYFORD A | B/W-HEARING | CP51CR00056432012 | 12/11/2012 13:00 | $RELEASED | | 1056957 | MEDINA, ANTHONY |
| | BENCH WARR | HEAR RM    UNCLASS | | | | | |
| | B/W-HEARING | CP51CR00037552012 | 12/11/2012 13:00 | $RELEASED | | 911467 | CHANDLER, TROY |
| | BENCH WARR | HEAR RM    MEDIUM | | | **EM-VIOLATION BENCH WARRANT** | | |
| | B/W-HEARING | MC51CR00266172008 | 12/11/2012 13:00 | $RELEASED | | 964887 | MCADAMS, ERIC |
| | BENCH WARR | HEAR RM    MEDIUM | | | | | |
| | B/W-HEARING | MC51CR00194802011 | 12/11/2012 13:00 | $RELEASED | | 924796 | WHICHARD, ANTHONY |
| | BENCH WARR | HEAR RM    MINIMUM | | | | | |
| | B/W-HEARING | MC51CR00157932012 | 12/11/2012 13:00 | $RELEASED | | 1121714 | PRICE, MATHEW |
| | BENCH WARR | HEAR RM    MEDIUM | | | | | |
| | B/W-HEARING | MC51CR00430392007 | 12/11/2012 13:00 | $RELEASED | | 1041679 | IZZARD, CHARLES |
| | BENCH WARR | HEAR RM    MINIMUM | | | | | |
| | B/W-HEARING | MC51CR00354912012 | 12/11/2012 13:00 | $RELEASED | | 949175 | CLOSE, TROY |
| | BENCH WARR | HEAR RM    MINIMUM | | | | | |
| | B/W-HEARING | MC51CR00065362012 | 12/11/2012 13:00 | $RELEASED | | 1119005 | CRAWFORD, MICHAEL |
| | BENCH WARR | HEAR RM    MINIMUM | | | | | |
| | B/W-HEARING | MC51CR10371172001 | 12/11/2012 13:00 | $RELEASED | | 765189 | BURTON, WILLIAM |
| | BENCH WARR | HEAR RM    MINIMUM | | | | | |
| | B/W-HEARING | MC51CR00320722012 | 12/11/2012 13:00 | $RELEASED | 1316214 | 994238 | LEWIS, SHAFEEQ |
| | BENCH WARR | HEAR RM    CLOSE | CFCF B2POD1 04 1 | | | | |
| MOSS, BRADLEY K. | B/W-HEARING | MC51CR00337632011 | 12/11/2012 13:00 | $RELEASED | | 1022968 | JOHNSON, AQUILL |
| | BENCH WARR | HEAR RM    MINIMUM | | | | | |
| | B/W-HEARING | CP51CR00148372007 | 12/11/2012 13:00 | $RELEASED | | 579163 | DORSEY, DAVID |
| | BENCH WARR | HEAR RM    CLOSE | | | | | |
| | B/W-HEARING | CP51CR00103932012 | 12/11/2012 13:00 | $RELEASED | | 652053 | CANNIZZARO, PAUL |
| | BENCH WARR | HEAR RM    MINIMUM | | | | | |
| | B/W-HEARING | MC51CR00194802011 | 12/11/2012 13:00 | $RELEASED | | 924796 | WHICHARD, ANTHONY |
| | BENCH WARR | HEAR RM    UNCLASS | | | | | |
| | B/W-HEARING | MC51CR00253432011 | 12/11/2012 13:00 | $RELEASED | | 1108644 | JONES, JONATHAN |
| | BENCH WARR | HEAR RM    MINIMUM | | | | | |
| | B/W-HEARING | MC51CR00139012012 | 12/11/2012 13:00 | $RELEASED | | 900972 | RHONE, ANTHONY |
| | BENCH WARR | HEAR RM    MINIMUM | | | | | |
| MEANS, RAYFORD A | B/W-HEARING | CP51CR00129462012 | 12/11/2012 13:00 | $RELEASED | | 1125057 | BELSER, BRYHEEM |
| | BENCH WARR | HEAR RM    MINIMUM | | | | | |
| | B/W-HEARING | MC51CR00130212012 | 12/11/2012 13:00 | $RELEASED | | 1120903 | GREENBERGER, MATTHEW |
| | BENCH WARR | HEAR RM    MINIMUM | | | | | |
| | B/W-HEARING | MC51CR00595311999 | 12/11/2012 13:00 | $RELEASED | | 704685 | COSTA, JOSEPH |
| | BENCH WARR | HEAR RM    CLOSE | | | | | |
| | B/W-HEARING | MC51CR00221091999 | 12/11/2012 13:00 | $RELEASED | | 704685 | COSTA, JOSEPH |
| | BENCH WARR | HEAR RM    CLOSE | | | | | |
| | B/W-HEARING | CP51CR00024002011 | 12/11/2012 13:00 | $RELEASED | | 987896 | CULP, JEFFREY |
| | BENCH WARR | HEAR RM    MEDIUM | | | judge only | | |
| OBRIEN, TIMOTHY P | B/W-HEARING | MC51CR00447512012 | 12/11/2012 13:00 | $RELEASED | | 865755 | DAVENPORT, TYRONE |
| | BENCH WARR | HEAR RM    UNCLASS | | | | | |
| | B/W-HEARING | CP51CR00061972009 | 12/11/2012 13:00 | $RELEASED | | 818927 | BREWSTER, DAVID |
| | BENCH WARR | HEAR RM    MINIMUM | | | | | |
| | B/W-HEARING | CP51CR00994542010 | 12/11/2012 13:00 | $RELEASED | | 684097 | WATKINS, FREDERICK |
| | BENCH WARR | HEAR RM    MINIMUM | | | | | |
| | B/W-HEARING | MC51CR00339462012 | 12/11/2012 13:00 | $RELEASED | | 1081348 | GUARCO, JONATHAN |
| | BENCH WARR | HEAR RM    MINIMUM | | | | | |
| | B/W-HEARING | CP51CR00069392012 | 12/11/2012 13:00 | $RELEASED | 1520332 | 837228 | WOOD, RONSHEA |

Prillerman 58

BENCH WARRANTS

Fax 2156857837

Jan  6 2016 09:35am  P005/008

```
MEANS, RAYFORD A    BENCH WARR HEAR RM   MINIMUM     OJ CEC CEC 310
         B/W-HEARING          BENCH WARR HEAR RM   UNCLASS     12/11/2012 13:00 $RELEASED            1123552 DICKERSON, ERIC
                    BENCH WARR HEAR RM   UNCLASS
         B/W-HEARING          MC51SU00063702004                12/11/2012 13:00 $RELEASED             660342 SEBRELL, KIP
                    BENCH WARR HEAR RM   MINIMUM
         B/W-HEARING          MC52CR06200312005                12/11/2012 13:00 $RELEASED             824289 DELLAQUILA, MICHAEL
OBRIEN, TIMOTHY P   BENCH WARR HEAR RM   MINIMUM
         B/W-HEARING          MC51CR00130222011                12/11/2012 13:00 $RELEASED            1105033 HUDSON, ERIC
                    BENCH WARR HEAR RM   MEDIUM
         B/W-HEARING          MC51CR00366152012                12/11/2012 13:00 $RELEASED            1039211 NELSON, MARQUELL
                    BENCH WARR HEAR RM   COMMUNITY
         B/W-HEARING          MC51CR00327372012                12/11/2012 13:00 $RELEASED            1114966 WOODARD, TROY
                    BENCH WARR HEAR RM   MINIMUM
         B/W-HEARING          MC51CR00203462012                12/11/2012 13:00 $RELEASED            1091164 HALLOWAY JR, STEVEN
                    BENCH WARR HEAR RM   MEDIUM
         B/W-HEARING          NC51CR00449762012                12/11/2012 13:00 $RELEASED             861610 HAMPTON, CARMELO
                    BENCH WARR HEAR RM   MINIMUM
         B/W-HEARING          MC51CR00378172012                12/11/2012 13:00 $RELEASED    1522617  684599 RIZZO, VINCENT
                    BENCH WARR HEAR RM   MINIMUM     DC DDRW 102 04
         B/W-HEARING          CP51CR00119142011                12/11/2012 13:00 $RELEASED            1085512 FIGUEROA, EMMANUEL
MEANS, RAYFORD A    BENCH WARR HEAR RM   MEDIUM
         B/W-HEARING          MC51CR00409942012                12/11/2012 13:00 $RELEASED             665081 PUGH, RONALD
                    BENCH WARR HEAR RM   MINIMUM
         B/W-HEARING          MC51CR10337311988                12/11/2012 13:00 $RELEASED             693327 MOUNTCASTLE, GEORGE
PRESENZA, LOUIS J   BENCH WARR HEAR RM   UNCLASS
         B/W-HEARING          MC51CR00288552011                12/11/2012 13:00 $RELEASED             661463 JOHNSON, MCKINLEY
BRADY, FRANK T.     BENCH WARR HEAR RM   MINIMUM
         B/W-HEARING          MC51CR00446802008                12/11/2012 13:00 $RELEASED             592789 VASQUEZ, THOMAS
                    BENCH WARR HEAR RM   MEDIUM
         B/W-HEARING          CP51CR00096252012                12/11/2012 13:00 $RELEASED             652053 CANNIZZARO, PAUL
                    BENCH WARR HEAR RM   MINIMUM
         B/W-HEARING          MC51CR00268052012                12/11/2012 13:00 $RELEASED             910327 WASHINGTON, BRADLEY
                    BENCH WARR HEAR RM   COMMUNITY
DC       B/W-HEARING          EXTRADITION HEARING              12/11/2012 08:00 $RELEASED             998726 REYES, ROBERT
                    BENCH WARR HEAR RM   MEDIUM
         B/W-HEARING          EXTRADITION HEARING              12/11/2012 08:30 $RELEASED    ROOM 888 1028515 SKARZYNSKI, SIGMUND
                    BENCH WARR HEAR RM   MINIMUM
         B/W-HEARING          EXTRADITION HEARING              12/11/2012 08:00 $RELEASED    ROOM 888  904455 RAMSEY, MATTHEW R
                    BENCH WARR HEAR RM   MEDIUM
         B/W-HEARING          MC51CR00359742012                12/11/2012 13:00 $RELEASED             741318 DIXON, JOHN
                    BENCH WARR HEAR RM   MINIMUM
         B/W-HEARING          MC51CR07209512004                12/11/2012 13:00 $RELEASED             985149 JASPER, NICOLE
HOC      B/W-HEARING          EXTRADITION HEARING              12/11/2012 08:00 $RELEASED            1012485 KEMP, KHALIK
                    BENCH WARR HEAR RM   MINIMUM                                              RM:888
         B/W-HEARING          EXTRADITION HEARING              12/11/2012 08:00 $RELEASED    1426299 1002181 BEY, TERRANCE
                    BENCH WARR HEAR RM   MEDIUM     HOC G2BLK 1268 2                          ROOM 888
         B/W-HEARING          EXTRADITION HEARING              12/11/2012 08:00 $RELEASED    ROOM 888  730055 BRADLEY, ODELL
                    BENCH WARR HEAR RM   MINIMUM
         B/W-HEARING          EXTRADITION HEARING              12/11/2012 08:00 $RELEASED    ROOM 886 1037285 FELIBERTY, RICARDO
                    BENCH WARR HEAR RM   CLOSE
PICC     B/W-HEARING          EXTRADITION HEARING              12/11/2012 08:00 $RELEASED    ROOM 886 1046855 LIONELLI, SALVATORE
                    BENCH WARR HEAR RM   MEDIUM
         B/W-HEARING          EXTRADITION HEARING              12/11/2012 08:00 $RELEASED    1413465  967895 HOWZE, ERICK J
                    BENCH WARR HEAR RM   MEDIUM     PICC AUNIT RM08 01                        ROOM 888
         B/W-HEARING          EXTRADITION HEARING              12/11/2012 08:00 $RELEASED    ROOM 888  669491 PEDROSA, LUIS
RCF      B/W-HEARING          BENCH WARR HEAR RM   MEDIUM
         B/W-HEARING          MC51CR00272772012                12/11/2012 13:00 $RELEASED            1125120 ALVIS, JESSICA
                    BENCH WARR HEAR RM   MINIMUM
         B/W-HEARING          MC51CR00432742012                12/11/2012 13:00 $RELEASED            1125120 ALVIS, JESSICA
                    BENCH WARR HEAR RM   MINIMUM
         B/W-HEARING          MC51CR00390852011                12/11/2012 13:00 $RELEASED             958504 MAJZIK, JESSICA
                    BENCH WARR HEAR RM   MEDIUM
         B/W-HEARING          MC51CR0G456872012                12/11/2012 13:00 $RELEASED            1130165 NOVELLI, TARA
                    BENCH WARR HEAR RM   COMMUNITY
         B/W-HEARING          MC51CR00366422012                12/11/2012 13:00 $RELEASED            1125120 ALVIS, JESSICA
                    BENCH WARR HEAR RM   MINIMUM
         B/W-HEARING          MC51CR00057562012                12/11/2012 13:00 $RELEASED             671464 GARDNER, ALISA
                    BENCH WARR HEAR RM   COMMUNITY
         B/W-HEARING          MC51CR00170512009                12/11/2012 13:00 $RELEASED            1071813 NOBLES, FATIMA
                    BENCH WARR HEAR RM   MINIMUM
         B/W-HEARING          MC51CR00006682012                12/11/2012 13:00 $RELEASED            1086434 NIXON, KHAIMA
```

*Appendix 8*

**Notice: All courts will be closed on Monday, January 18, 2016 in observance of MARTIN LUTHER KING, JR. DAY, except Municipal Court's Arraignment Court and the filing of Emergency Protection from Abuse Petitions at the Justice Juanita Kidd Stout Center for Criminal Justice, 1301 Filbert St.**

🏠   Criminal Court Calendar     Courtroom Search

Enter the Courtroom Number          888 7901 state road          [ Search ]   [ Reset ]

▸ advanced search option

834 Records Found. Displaying page 1 of 34:

| Location | Date | Defendant Name | Docket Number | | Hearing Type | Attorney for Defendant |
|----------|------|----------------|---------------|---|--------------|------------------------|
| 888 7901 State Road | 1/19/2016 | Alston-Hammond, Rashea L. | CP-51-CR-0008296-2011 | 🔍 | Gagnon I Hearing Scheduled | |
| 888 7901 State Road | 1/19/2016 | Alston-Hammond, Rashea L. | CP-51-CR-0008296-2011 | 🔍 | Gagnon I Hearing Scheduled | Defender Association of Philadelphia |
| 888 7901 State Road | 1/19/2016 | Archer, Edward | CP-51-CR-0006717-2013 | 🔍 | Gagnon I Hearing Scheduled | |
| 888 7901 State Road | 1/19/2016 | Archer, Edward | CP-51-CR-0006717-2013 | 🔍 | Gagnon I Hearing Scheduled | Borum, Trevan |
| 888 7901 State Road | 1/19/2016 | Ayende, Marlelino | CP-51-CR-0003641-2012 | 🔍 | Gagnon I Hearing Scheduled | Gil, Anthony |
| 888 7901 State Road | 1/19/2016 | Ayende, Marlelino | CP-51-CR-0003641-2012 | 🔍 | Gagnon I Hearing Scheduled | |
| 888 7901 State Road | 1/19/2016 | Brooks, Troy | CP-51-CR-0010601-2010 | 🔍 | Gagnon I Hearing Scheduled | Defender Association of Philadelphia |
| 888 7901 State Road | 1/19/2016 | Brooks, Troy | CP-51-CR-0010601-2010 | 🔍 | Gagnon I Hearing Scheduled | |
| 888 7901 State Road | 1/19/2016 | Carpenter, William Keion | CP-51-CR-0804131-2006 | 🔍 | Gagnon I Hearing Scheduled | |
| 888 7901 State Road | 1/19/2016 | Carpenter, William Keion | CP-51-CR-0804131-2006 | 🔍 | Gagnon I Hearing Scheduled | Bennett, Althia O. |
| 888 7901 State Road | 1/19/2016 | Clanton, Dayguune | CP-51-CR-0013272-2012 | 🔍 | Gagnon I Hearing Scheduled | |
| 888 7901 State Road | 1/19/2016 | Clanton, Dayguune | CP-51-CR-0013272-2012 | 🔍 | Gagnon I Hearing Scheduled | Defender Association of Philadelphia |
| 888 7901 State Road | 1/19/2016 | Clover, Malik | CP-51-CR-0013558-2010 | 🔍 | Gagnon I Hearing Scheduled | Stein, Gerald A. |
| 888 7901 State Road | 1/19/2016 | Clover, Malik | CP-51-CR-0013558-2010 | 🔍 | Gagnon I Hearing Scheduled | |
| 888 7901 State Road | 1/19/2016 | Coleman, Turek | CP-51-CR-0012841-2011 | 🔍 | Gagnon I Hearing Scheduled | Savino, Louis Theodore Jr. |
| 888 7901 State Road | 1/19/2016 | Coleman, Turek | CP-51-CR-0012841-2011 | 🔍 | Gagnon I Hearing Scheduled | |
| 888 7901 State Road | 1/19/2016 | Collas, Michael P. | MC-51-CR-0031448-2014 | 🔍 | Gagnon I Hearing Scheduled | |
| 888 7901 State Road | 1/19/2016 | Dasilva, Alexander | MC-51-CR-0002362-2014 | 🔍 | Gagnon I Hearing Scheduled | |
| 888 7901 State Road | 1/19/2016 | Dasilva, Alexander | CP-51-CR-0010614-2014 | 🔍 | Gagnon I Hearing Scheduled | |
| 888 7901 State Road | 1/19/2016 | Dasilva, Alexander | CP-51-CR-0010614-2014 | 🔍 | Gagnon I Hearing Scheduled | Defender Association of Philadelphia |
| 888 7901 State Road | 1/19/2016 | Dasilva, Alexander | CP-51-CR-0000366-2015 | 🔍 | Gagnon I Hearing Scheduled | Defender Association of Philadelphia |
| 888 7901 State Road | 1/19/2016 | Dasilva, Alexander | CP-51-CR-0000366-2015 | | Gagnon I Hearing | |