IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

FRANKLYN DEVON PRILLERMAN

    Plaintiff                    CIVIL ACTION NO.

v.                                    13-1414

CITY OF PHILADELPHIA, ET AL..,       JURY TRIAL DEMANDED

    Defendant

## COURTESY EXHIBITS FOR THE COURT IN SUPPORT OF PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION FOR SUMMARY JUDGEMENT

Plaintiff, Franklyn Prillerman, pro se, hereby file courtesy exhibits for the Court in support of Plaintiff's Response to Defendants' Motion for Summary Judgement pursuant Federal Rules of Civil Procedure and this Honorable Court's Policies and Procedures.

I    **TABLE OF CONTENTS**

PA Rule 119-Exhibit 1……………………………………………………………..page 1

Defendant Lynch deposition-Exhibit 2…………………………………page 5

Arkansas Community Corrections ledger-Exhibit 3……………..page 12

Arkansas Appellate Court Decision-Exhibit 4………………………..page 14

## Rule 119. Use of Two-Way Simultaneous Audio-Visual Communication in Criminal Proceedings.

(A) The court or issuing authority may use two-way simultaneous audio-visual communication at any criminal proceeding except:

   (1) preliminary hearings;

   (2) proceedings pursuant to Rule 569(A)(2)(b);

   (3) proceedings pursuant to Rules 595 and 597;

   (4) trials;

   (5) sentencing hearings;

   (6) parole, probation, and intermediate punishment revocation hearings; and

   (7) any proceeding in which the defendant has a constitutional or statutory right to be physically present.

(B) The defendant may consent to any proceeding being conducted using two-way simultaneous audio-visual communication.

(C) When counsel for the defendant is present, the defendant must be permitted to communicate fully and confidentially with defense counsel immediately prior to and during the proceeding.

### Comment

This rule was adopted in 2003 to make it clear that unless the case comes within one of the exceptions in paragraph (A), the court or issuing authority may use two-way simultaneous audio-visual communication in any criminal proceeding. Two-way simultaneous audio-visual communication is a type of advanced communication technology as defined in Rule 103.

Nothing in this rule is intended to limit any right of a defendant to waive his or her presence at a criminal proceeding in the same manner as the defendant may waive other rights. *See, e.g.,* Rule 602 Comment. Negotiated guilty pleas when the defendant has agreed to the sentence, probation revocation hearings, and hearings held pursuant to Rule 908(C) and the Post Conviction Relief Act, 42 Pa.C.S. § § 9541 et seq., are examples of hearings in which the defendant's consent to proceed using two-way simultaneous audio-visual communication would be required. Hearings on post-sentence motions, bail hearings, bench warrant hearings, extradition hearings, and *Gagnon* I hearings are examples of proceedings that may be conducted using two-way simultaneous audio-

visual communication without the defendant's consent. It is expected the court or issuing authority would conduct a colloquy for the defendant's consent when the defendant's constitutional right to be physically present is implicated.

Within the meaning of this rule, counsel is present when physically with the defendant or with the judicial officer conducting the criminal proceeding.

This rule does not apply to preliminary arraignments (Rule 540), arraignments (Rule 571), or to search warrant (Rule 203) and arrest warrant (Chapter 5 Part B(3)) procedures.

This rule is not intended to preclude the use of advanced communication technology for the preservation of testimony as permitted by Rules 500 and 501.

*See* Rule 542 for the procedures governing preliminary hearings.

*See* Chapter 6 for the procedures governing trials.

*See* Chapter 7 for the procedures governing sentencing hearings.

*See* Rule 708 for the procedures governing revocation of probation, intermediate punishment, and parole.

The paragraph (A)(5) reference to revocation hearings addresses *Gagnon* II-type probation (*Gagnon v. Scarpelli*, 411 U.S. 778 (1973)) and parole (*Morrissey v. Brewer*, 408 U.S. 471 (1972)) revocation hearings, and is not intended to prohibit the use of two-way simultaneous audio-visual communication in hearings to determine probable cause (*Gagnon I*).

Official Note

New Rule 118 adopted August 7, 2003, effective September 1, 2003; renumbered Rule 119 and Comment revised June 30, 2005, effective August 1, 2006; amended January 27, 2006, effective August 1, 2006; Comment revised May 4, 2009, effective August 1, 2009; amended July 31, 2012, effective November 1, 2012.

*Committee Explanatory Reports*:

Final Report explaining new Rule 118 published with the Court's Order at 33 Pa.B. 4287 (August 30, 2003).

Final Report explaining the June 30, 2005 renumbering of Rule 118 as Rule 119 and the revision of the second paragraph of the Comment published at 35 Pa.B. 3911 (July 16, 2005).

Final Report explaining the January 27, 2006 amendments adding Rule 569 proceedings as a proceeding for which ACT may not be used published with the Court's Order at 36 Pa.B. 700 (February 11, 2006).

Final Report explaining the May 4, 2009 revision to the Comment adding PCRA hearings as a proceeding to which the defendant may consent to be held using ACT published with the Court's Order at 39 Pa.B. 2434 (May 16, 2009).

Final Report explaining the July 31, 2012 amendment to paragraph (A) adding proceedings under Rule 595 and 597 as a proceedings for which ACT may not be used published with the Court's Order at 42 Pa.B. 5340 (August 18, 2012).

### Source

The provisions of this Rule 119 adopted August 7, 2003, effective September 1, 2003, 33 Pa.B. 4287; amended June 30, 2005, effective August 1, 2006, 33 Pa.B. 3901; amended January 27, 2006, effective August 1, 2006, 36 Pa.B. 694; amended May 4, 2009, effective immediately, 39 Pa.B. 2434; amended July 31, 2012, effective November 1, 2012, 42 Pa.B. 5333. Immediately preceding text appears at serial pages (360825) to (360826).

---

No part of the information on this site may be reproduced for profit or sold for profit.

This material has been drawn directly from the official Pennsylvania Code full text database. Due to the limitations of HTML or differences in display capabilities of different browsers, this version may differ slightly from the official printed version.

EXHIBIT 2

Deposition testimony of Defendant Lynch affirming that:

1. She conducted hearings in the same manner during her nine (9) year tenure as hearing officer
2. That she always had prisoners speak to their attorneys in the presence and hearing of other prisoners and herself.
3. That Defendant Lynch, as of the date of the deposition had received no additional training as to Rule 119 or any updated pertinent policy of the Philadelphia Prison System.

    (Whereupon, the above-mentioned

drawing was marked for

identification as Exhibit-1.)

       * * *

BY MR. PRILLERMAN:

  Q Miss Lynch, could you describe in your own words what happens during a hearing?  Like I know that someone gathers up the inmates who are going to have hearings at a particular time, brings them to the hearing room.  Go from there.

  A Inmates sit and wait until the attorney calls.

  Q And that's it?  Nothing else occurs? What do you do after their turn comes?  What do you mean by when their turn comes?

  A No.  I said when an attorney calls.

  Q Oh, when the attorney calls?

  A Yeah.

  Q So the attorney calls you?

  A Yes.

  Q And what happens then?

  A They ask to speak to whomever, I guess who they have on their list.

  Q Okay.  And where are you during that

conversation?

A   On the phone. What you talking about? With the attorney?

Q   When the attorney calls he talks to you first.

A   Yes. "Do you have such-and-such? Yes." Such-and-such gets on the phone.

Q   Then you put that person on the phone?

A   Yes.

Q   And where are you when that person is talking on the phone to his attorney?

A   Probably standing on the back part of the -- in the room where the gate is.

Q   How far in distance? How far are you away from the person speaking to the attorney on the phone?

A   Distance I don't know, but it's by the door and the inmate's in the room on the phone.

Q   Are there other inmates in the room at the time the one inmate is on the phone with the attorney?

A   Yes.

Q   Are they in hearing distance?

A   Yes.

Q   Are you in hearing distance?

A   Yes.

Q   Do you give any kind of instructions to the people, the inmates, when they come into the hearing room of how this thing is going to go?

A   Yes.

Q   And what are those instructions?  And I'm talking about 2012.  I'm not talking about now.

A   2012?  You're going to speak to your attorney on the phone.  You're going to speak to the public defender on the phone unless you have a private attorney.

Q   And they say yes?

A   You say okay and that's that.

Q   That's the total of your instructions?

A   Yes.

Q   During the hearing.  How long -- you've been a hearing room officer for nine years, so just ballpark figure, guestimate, how long does, and I know they're all different, but how long ballpark generally does the inmate speak on the phone?

A   Don't know.  Some of them are longer than others.

Q   So there is like discussing their cases

A    Yes.

Q    I see. Okay. So it looks like, and I'm just perusing, but looks like maybe 10 hearings a day?

A    The hearings each day varies.

Q    Each day varies. Right.

A    Yes.

Q    But on this particular sheet it looks like there was maybe 10 to 15 hearings.

A    Scheduled. But not --

Q    That doesn't mean they occurred?

A    Right, correct.

Q    Okay. I'm with you. Who trained you to be the hearing officer? Who trained you and what training did you receive?

A    A sergeant before I -- a sergeant that used to do it before me trained me.

Q    What was his name?

A    It was a female. What's her name? She's a captain now.

Q    Who is William Rivera?

A    Oh, he showed me too. He's a sergeant.

Q    Sergeant Rivera showed you as well?

A    Yes.

Q    During your time as a hearing officer did you ever have the opportunity or the occasion to file a misconduct report against an inmate?

A    No.

Q    While the hearing thing was going on?

A    No.

Q    Never? Okay. Did you receive a copy of the grievance I filed against you in January of 2013?

A    No.

Q    You never received it? What's your normal work shift as the hearing officer?

A    8:30 to 4:30.

Q    Has the hearing room changed at all since 2012, the hearing room you're assigned to, 888?

A    Changed how?

Q    Physically, structurally.

A    No.

Q    Has the policy for the hearings, conducting the hearings, changed?

A    No.

Q    So you're not aware of any new policies regarding the hearing rooms, the video hearings, since 2012?

EXHIBIT 3

Ledger of Arkansas Community Corrections showing that Plaintiff paid supervision fees and reported monthly beginning February 2012 thru September 2012. Payments and reports for October and November were held by Probation Ofc Coyle

COPS010B - Offender / Payee Accou... Page 1 of 1

Name: Prillerman, Franklin D. Jr     Docket #: 2011-269   PID #: 0236254

COPS010B     **Offender / Payee Account**     Thursday February 28, 2013 10:46:49 AM

### Account

| | |
|---|---|
| Commitment Prefix*: | 01 |
| Account Type*: | Supervision Fee |
| Account Status*: | Open |
| Court: | Unknown |
| Court Date: | |
| Distribution Priority*: | 1st |
| Original Obligation Amt.: | $ 0.00 |
| Total Ordered: | $ 0.00 |
| Paid: | $ 210.00 |
| Balance: | $ -210.00 |
| Account Sequence #: | 001 |
| As of*: | 02/14/2012 |
| Docket #: | |
| Established Date*: | 02/14/2012 |
| Collection Rule*: | Collected by Department |
| Intercept Rule*: | Collection Payment Only |
| Intercept %: | 0.00 |

[Status History]

### Payee Money Owed To

| | |
|---|---|
| Party ID: | 0058123 |
| Payee Type: | State Treasury |
| Claim #: | |
| Name of Insured: | |
| Address: | 220 State Capitol Mall<br>Little Rock, Arkansas 72201<br>Pulaski County |
| Name: | Arkansas State Treasury |
| Status: | Active |
| Policy #: | |
| Attention: | |

### Comments

None

### Account Transactions (1 - 7 of 7)

| Date | Type | Status | Amount | Balance | Task # | Receipt # | Disb # |
|---|---|---|---|---|---|---|---|
| 09/25/2012 | Payment (collected by Dept) | Applied | ($ 35.00) | $ -210.00 | 0 | 0001954401 | |
| 07/20/2012 | Payment (collected by Dept) | Applied | ($ 35.00) | $ -175.00 | 0 | 0001932393 | |
| 06/30/2012 | Payment (collected by Dept) | Applied | ($ 35.00) | $ -140.00 | 0 | 0001924671 | |
| 05/11/2012 | Payment (collected by Dept) | Applied | ($ 35.00) | $ -105.00 | 0 | 0001908437 | |
| 04/11/2012 | Payment (collected by Dept) | Applied | ($ 35.00) | $ -70.00 | 0 | 0001897382 | |
| 03/07/2012 | Payment (collected by Dept) | Applied | ($ 35.00) | $ -35.00 | 0 | 0001883556 | |
| 02/14/2012 | Original Obligation | Applied | $ 0.00 | $ 0.00 | 0 | N/A | |

[Prior Page]    [Print this screen]

Show "Last Updated By" Information

79

EXHIBIT 4

The Arkansas Appellate Court decision finding that there was no "willful noncompliance" with conditions of probation necessary for revocation of probation and thereby reversing and dismissing the Circuit courts conviction.

Cite as 2014 Ark. App. 46

# ARKANSAS COURT OF APPEALS

DIVISION II
No. CR-13-647

| | |
|---|---|
| FRANKLIN PRILLERMAN<br>APPELLANT<br><br>V.<br><br>STATE OF ARKANSAS<br>APPELLEE | Opinion Delivered January 22, 2014<br><br>APPEAL FROM THE LONOKE COUNTY CIRCUIT COURT<br>[NO. CR-11-269]<br><br>HONORABLE SANDY HUCKABEE, JUDGE<br><br>REVERSED AND DISMISSED |

### ROBERT J. GLADWIN, Chief Judge

Franklin Prillerman appeals the revocation of his probationary sentence in Lonoke County Circuit Court, arguing that there was insufficient evidence to support the circuit court's revocation order. We agree that the State failed to carry its burden of proof, and we reverse.

Appellant pled guilty to possession of marijuana with intent to deliver and possession of drug paraphernalia and by order filed February 15, 2012, was sentenced to concurrent terms of eight years' probation on each count. A petition to revoke probation was filed on March 22, 2013, alleging that appellant had failed to report to his supervising officer in Pennsylvania since his probation intake in Arkansas.

At the hearing on the petition for revocation, Brad Coyle, a probation officer in Lonoke County, testified that, from a review of his case file, appellant's probation was to be transferred from Lonoke County, Arkansas, to Philadelphia, Pennsylvania. Coyle testified

Cite as 2014 Ark. App. 46

that his office "would only take action unless we were notified by the receiving state whether a violation had occurred. In this instance our action was to file a violation report and submit it to the prosecuting attorney's office." He further stated that on September 21, 2012, he opened correspondence from appellant containing a monthly-report form and a thirty-five dollar money order. The report form reflected appellant's address at 4307 North Hicks, Philadelphia, Pennsylvania, 19040. Coyle also claimed that two more monthly-report forms were received on different dates. One contained a note from appellant stating, "Tried to raise supervision fee but was unable. Income reduced this month. Will pay in September." Coyle stated that, under the federal compact law, Pennsylvania should be receiving that payment. Coyle testified that he did not know of appellant reporting to anybody for probation.

Appellant moved for a directed verdict, arguing that there was no testimony from anyone in the Pennsylvania office about whether appellant reported, even though that was the allegation in the petition. Appellant claimed that there was a distinct lack of evidence that he was contacted by the Philadelphia office or knew what was expected of him. The State argued that, if appellant had done what was required, the case would not be in court and no violation report would have been filed. Further, the State argued that appellant's sending letters to Arkansas claiming that he could not pay was not in the normal course of business when probation has been transferred to another state. The State claimed that, even though no one testified that appellant did not report, it is clear that he did not report because he is still "talking" to Lonoke and paying only thirty-five dollars on his fines. Appellant

2

Cite as 2014 Ark. App. 46

countered that there was no evidence that he was sufficiently advised as to the process of transferring the probation to Pennsylvania; thus, there was no evidence that he willfully violated the conditions of his probation. The trial court denied the motion.

Appellant did not present any further evidence but renewed his motion for directed verdict, arguing that he was sending his payments and doing the best that he could and that the State had failed to prove that any violation was willful. The trial court ruled, based on its consideration of State's Exhibits One, Two, and Three, along with the testimony of Officer Coyle, that the State met its burden of proof and the petition to revoke for failure to report to his supervising officer in Pennsylvania was granted.[1] Appellant was sentenced to serve sixty months' imprisonment, with a suspended imposition of sentence of thirty months. The sentencing order was filed on April 22, 2013, and appellant filed a notice of appeal on May 10, 2013. This appeal followed.

The burden on the State in a revocation proceeding is to prove by a preponderance of the evidence that the defendant inexcusably failed to comply with at least one condition of his probation. *Amos v. State*, 2011 Ark. App. 638; Ark. Code Ann. § 16-93-308(d) (Supp. 2011). Because the burden on the State is not as great in a revocation hearing as in a criminal trial, evidence that is insufficient for a criminal conviction may be sufficient for revocation

---

[1] State's Exhibit One is appellant's guilty-plea agreement filed February 15, 2012. State's Exhibit Two is an Arkansas Department of Community Correction form entitled "Monthly Supervision Report & Needs Assessment for Parole/Probation" that reflects that appellant's address was in Philadelphia, Pennsylvania, and that he was living with his sister. State's Exhibit Three is identical to Exhibit Two, except that it is signed by appellant and dated August 24, 2013. On the back of Exhibit Three is the handwritten note indicating that appellant's income was reduced and that he would pay in September.

Cite as 2014 Ark. App. 46

of probation or suspended sentence. *Patterson v. State*, 99 Ark. App. 136-A, 257 S.W.3d 921 (2007). On appellate review of an order revoking probation, the trial court's findings will be upheld unless they are clearly against the preponderance of the evidence. *Id.* The determination of a preponderance of the evidence turns on questions of credibility and weight to be given to the testimony, and we therefore defer to the trial judge's superior position. *Id.*

Appellant contends that there is insufficient evidence to support the trial court's findings of a willful violation of the conditions of probation. We agree. To support the State's allegation that appellant failed to report to his probation officer in Pennsylvania, Officer Coyle testified that he received a "response" from Pennsylvania, and based on that response, his office filed a violation report. He further testified regarding mail received from appellant that contained a monthly-report form and a money order. However, this testimony was insufficient for the trial court to conclude that appellant willfully violated the terms and conditions of his probation, as there was no evidence that he was required to report in Pennsylvania. Further, there was no testimony from anyone that appellant was given directions to whom to report in Pennsylvania. Thus, there was no evidence presented to the trial court of a violation of any condition of appellant's probation.

The State argues that appellant's arguments are meritless. The State contends that Officer Coyle testified that "from his review of the file that appellant failed to report to a supervising officer in Pennsylvania." Officer Coyle's testimony was as follows:

> We would only take action unless we were notified by the receiving state whether a violation had occurred. In this instance our action was to file a violation report and

4

Cite as 2014 Ark. App. 46

submit it to the prosecuting attorney's office.

The State also points to Officer Coyle's testimony that when a probationer is transferred to another state, the probationer would not send money back to the sentencing state, instead the money would go to the actual supervising state. The State argues that Officer Coyle would have had no reason to contact the prosecutor's office to file a petition to revoke appellant's probation had appellant reported as was required. The State further asserts that the fact that appellant was corresponding with Lonoke County and sending minimal payments suggests that he failed to report in Pennsylvania.

We do not agree with the State's conclusion that the trial court's finding was not clearly against the preponderance of the evidence. The State failed to present evidence of the establishment of probationary parameters for appellant in Pennsylvania, nor did the State establish that appellant failed to comply with those conditions. The State's argument, that logic must lead us to conclude that appellant must have established a probationary transfer to Pennsylvania and that he thereafter did not comply with that probation because a revocation petition had been filed, does not meet its burden of proof, but only serves to establish that a petition to revoke was filed.

Reversed and dismissed.

WOOD and BROWN, JJ., agree.

*The Lane Firm*, by: *Jonathan T. Lane*, for appellant.

*Dustin McDaniel*, Att'y Gen., by: *Ashley Argo Priest*, Ass't Att'y Gen., for appellee.